[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 11, 2005
THOMAS  K. KAHN
CLERK

No. 04-14029
Non-Argument Calendar

_____

D.C. Docket No. 02-00073-CR-J-25-HRS

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ALBERTO J. BUILES,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

**(July 11, 2005)**

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

The government appeals Alberto J. Builes-Molina's 97-month sentence for

conspiracy to import five kilograms or more of cocaine and one kilogram or more

of heroin, in violation of 21 U.S.C. §§ 960(b)(1)(A), (b)(1)(B) and 963.  The government argues on appeal that the district court improperly calculated Builes-Molina's Guidelines range based on its interpretation of <u>Blakely v. Washington</u>, 542 U.S. ____, 124 S. Ct. 2531 (2004), which was applied to the Sentencing Guidelines in <u>United States v. Booker</u>, 543 U.S. __, 125 S. Ct. 738 (2005).  After review, we vacate Builes-Molina's sentence and remand for resentencing.

## I. BACKGROUND

### A.  Plea Colloquy

Pursuant to a written plea agreement, Builes-Molina pled guilty to conspiracy to import five kilograms or more of cocaine and one kilogram or more of heroin.  At the plea colloquy, the government set forth the following facts, which Builes-Molina admitted as true.  From in or about January 2002 through March 2002, an undercover United States Customs Service agent engaged in a series of telephone calls with Builes-Molina regarding the importation of cocaine and heroin into the United States from Colombia through the use of commercial freight vessels.  Builes-Molina agreed with the undercover agent to arrange the importation of several shipments of cocaine and heroin into the United States via freight vessels that dock at ports in Bridgeport, Connecticut, and Fernandina, Florida.  Builes-Molina further agreed to pay the undercover agent a transportation

fee for off-loading the drug shipments from the freighters and delivering the cocaine or heroin to one or more of Builes-Molina's agents.

During February 2002, Builes-Molina advised the undercover agent about three drug shipments by three different freighter vessels. The United States Customs Service officials, acting on the information provided by the undercover agent, located and seized three separate shipments of drugs from commercial freighter vessels in Bridgeport, Connecticut. All of the cocaine and heroin from the three shipments were transported to the Middle District of Florida by Customs agents for later delivery to Builes-Molina's co-conspirators, David Rosario and George A. Portoreal. The amount of drugs involved in these three shipments totaled 12 kilograms of cocaine and 1.366 kilograms of heroin.[1]

On or about March 18, 2002, Rosario and Portoreal traveled from New York to Jacksonville to meet with an undercover agent. On or about March 20, 2002, Rosario and Portoreal contacted the undercover officer by telephone and arranged to purchase the cocaine. At the meeting place, Rosario and Portoreal were arrested. After being advised of his rights, Rosario told law enforcement officers that he had arranged the purchase of the cocaine for defendant Builes-

---

[1]Because Builes-Molina admitted to the drug quantity in these three shipments, there is no Booker issue as to drug quantity.

Molina. Rosario then agreed to cooperate with law enforcement officers and made a controlled telephone call to Builes-Molina in which Builes-Molina told Rosario to pay him for the cocaine in a couple of days.

The district court then adjudged Builes-Molina guilty.

**B.      PSI and Sentencing**

The Presentence Investigation Report ("PSI") recommended a base offense level of 34, pursuant to U.S.S.G. § 2D1.1(c)(3), because Builes-Molina was responsible for 11.8 kilograms of cocaine and 1.29 kilograms of heroin.[2] The PSI recommended a four-level enhancement, pursuant to U.S.S.G. § 3B1.1(a), for Builes-Molina's role as an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. Specifically, the PSI stated that the enhancement was appropriate because throughout the conspiracy, Builes-Molina organized three separate drug shipments from Colombia to the United States, using shipping vessels, and arranged for their retrieval. Additionally, after the drugs were obtained, Builes-Molina continued to communicate with the undercover agent and facilitated four separate drug purchases, in which there were

---

[2]Builes-Molina's drug quantity converted to a marijuana equivalency of 3,657.42 kilograms of marijuana.

a total of six participants, not including Builes-Molina or other unindicted individuals necessary to achieve the criminal objective.

The PSI also recommended a three-level reduction, pursuant to § 3E1.1, for acceptance of responsibility. With a total offense level of 35 and a criminal history category of I, Builes-Molina's Guidelines range was 168-210 months' imprisonment. Builes-Molina objected to the PSI's recommendation of a four-level role enhancement.

At sentencing, Builes-Molina renewed his objection to the four-level role enhancement, arguing that such an enhancement would be unconstitutional under Blakely because the facts supporting the enhancement were neither admitted by Builes-Molina nor found by a jury. The district court agreed with Builes-Molina and stated that it was "of the opinion that to enhance [Builes-Molina's sentence] based on the leadership role is unconstitutional pursuant to Blakely."

Nevertheless, the district court allowed the government to present additional evidence to support the role enhancement. Customs agent Lisa Wainwright testified in detail about each of the four drug transactions, including Builes-Molina's role in the transactions and the associates that Builes-Molina supervised, including Ronald Pagan, Augustin Vasquez, Melanio Bode, David Rosario, and George Portoreal.

Ultimately, the district court ruled that <u>Blakely</u> prohibited it from applying the role enhancement. The district court calculated Builes-Molina's base offense level at 34. The district court reduced Builes-Molina's base offense level by two, determining that Builes-Molina was entitled to safety-valve relief, pursuant to 18 U.S.C. § 3553(f)(1)-(5); U.S.S.G. §§ 5C1.2 and 2D1.1(b)(6). The district court further reduced Builes-Molina's base offense level by three levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. With a total offense level of 29 and a criminal history category of I, Builes-Molina's Guidelines range was 87-108 months' imprisonment.

The government objected to application of the safety-valve reduction, arguing that safety-valve relief is not available if the defendant is a leader or organizer, and that the district court should have made a finding as to the role enhancement.[3] The district court overruled the government's objection and sentenced Builes-Molina to 97 months' imprisonment and three years' supervised release.[4] The government appealed.

_____

[3]The district court actually concluded that Builes-Molina was not a leader or organizer based on its determination that it could not, under <u>Blakely</u>, apply a role enhancement under U.S.S.G. § 3B1.1.

[4]The statutory minimum for Builes-Molina's offense was 120 months' imprisonment. 21 U.S.C. §§ 960(b)(1)(A) & (B). However, application of the safety-valve provision enabled the district court to sentence Builes-Molina below the statutory minimum.

## II. STANDARD OF REVIEW

Post-Booker, we still review de novo questions of law arising under the Guidelines, and we still review a district court's findings of fact for clear error. United States v. Crawford, 407 F.3d 1174, 1177-78 (11th Cir. 2005).

## III. DISCUSSION

On appeal, the government argues that the district court erred in refusing to determine Builes-Molina's leadership role pursuant to U.S.S.G. § 3B1.1 based on its interpretation that Blakely prohibited such an enhancement. The government further contends that the refusal to make a finding pursuant to U.S.S.G. § 3B1.1 caused the district court to mistakenly apply the safety-valve provision of U.S.S.G. § 5C1.2, and thus improperly allow the district court to grant a two-level reduction and sentence Builes-Molina below the 120-month statutory minimum sentence.

"[A]fter Booker, the district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Crawford, 407 F.3d at 1178 (quotation marks, brackets, and citation omitted). "This consultation requirement, at a minimum, obliges the district court to calculate correctly the sentencing range prescribed by the Guidelines." Id. Further, "[a] misinterpretation of the Guidelines by a district court effectively

means that the district court has not properly consulted the Guidelines." Id. (internal quotation marks, brackets, and citation omitted).

In this case, the district court did not properly consult the Guidelines because the district court erroneously believed it could not constitutionally apply a role enhancement. While Booker confirmed that Blakely applied to the sentencing Guidelines, Booker clarified that a sentencing enhancement based on a finding by a judge does not per se raise a constitutional issue. Booker, 125 S. Ct. at 750. As explained in United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir.), cert. denied, – S. Ct. – , 2005 WL 483174 (U.S. June 20, 2005), "[t]he constitutional error is the use of extra-verdict enhancements to reach a guidelines result that is binding on the sentencing judge; the error is the mandatory nature of the guidelines once the guidelines range has been determined." (Emphasis added).

Thus, the district court erred in determining that it could not constitutionally apply the role enhancement and thus did not properly consider the Guidelines. Accordingly, we must vacate Builes-Molina's sentence and remand this case to the district court for resentencing. See Crawford, 407 F.3d at 1183 ("Because district courts are required under Booker to consult the Guidelines, and because true consultation cannot be based on an erroneous understanding of the Guidelines, the district court erred in failing to consult properly the Guidelines.").

8

On remand, the district court must calculate an advisory Guidelines range and must consider whether the evidence is sufficient to support the government's contention that Builes-Molina was a leader or organizer, thereby triggering the role enhancement. After the district court calculates the Guidelines range, the district court must sentence Builes-Molina considering that range and "other statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp. 2004)." Booker, 125 S. Ct. at 757. We vacate Builes-Molina's sentence in its entirety and remand for resentencing.

**VACATED AND REMANDED**.